

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 30  I A 9: 02

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MAURICE ANDERSON | CIVIL ACTION |
| VERSUS | NO. 04-2734 |
| JAMES D. MILLER WARDEN, MAJOR JERRY P. MILLER, MS. NITA PITTMAN, HUGH MCGEE, MS. BESSIE CARTER, AND MS. ROWLEY | SECTION: "A" (4) |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Defendant James Miller (Rec. Doc. No. 6)** which, along with the case, was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. On December 9, 2004, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny. The plaintiff, Maurice Anderson, *pro se*, participated by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 4. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being forwarded to the custody of the Court Recording Unit along with a copy of this order.

___ Fee_____
___ Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No._____

I.   **Factual Summary**

   A.   **The Complaint**

The plaintiff, Maurice Anderson ("Anderson"), is incarcerated in Washington Correctional Institute ("WCI") in Angie, Louisiana. He filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Warden James D. Miller, Jr., Major Jerry P. Miller, Sergeant Hugh Magee, Director of Nursing Bessie Carter, Stephanie Rowley, RN, and Oneita Pittman, RN. The defendants are sued in their individual and official capacities.

Anderson alleges that on February 5, 2004, he was housed in a segregation cell when Sergeant Magee ordered him to take the mattress out of his cell. Anderson claims that he told Sergeant Hugh Magee ("Magee") that his duty status did not allow him to lift more than 15 pounds. He alleges that Magee told him that he did not have such a duty status and threatened to write a disciplinary charge against him.

Anderson claims that Magee later charged him with a disciplinary violation for refusing to move the mattress by claiming that he had a lifting restriction of no more than 25 pounds.[3] A disciplinary hearing was held before Major Jerry Miller ("Major Miller") and Daisy Wascom ("Wascom"). Major Miller telephoned the medical department during the disciplinary hearing and spoke to Nurse Oneita Pittman ("Nurse Pittman"). She reportedly advised Major Miller that Anderson did not have that lifting restriction on his duty status.

Anderson further alleges that, during the disciplinary hearing, he asked Major Miller to send someone to retrieve his duty status which had the 15-pound restriction from his locker box. The duty

---

[3]The disciplinary report and related disciplinary rulings are attached to the complaint.

2

status paper was located and brought to Major Miller, who, nevertheless, found Anderson guilty as charged and sentenced him to serve 10 days in isolation.

Anderson also alleges that he appealed the decision to Warden James Miller. The Warden granted the appeal finding that a clerical error had led to the separation of his medical duty status, which showed a 15-pound lifting restriction, from his mental duty status. He ordered that Magee's disciplinary report be dismissed and stricken from Anderson's record.

Anderson now alleges that any such error occurred in the medical department and contends that his disciplinary conviction was the result of a conspiracy and recklessness by the department. He argues that his medical duty status was clearly written on a form with an expiration date of March 5, 2004. He also contends that Nurse Pittman lied and conspired with the other defendants to cause his conviction on the disciplinary charge. He also alleges that Bessie Carter, the Director of Nursing, also lied to cover up the fact that her nurses lied about his medical status which contributed to his disciplinary conviction.

Anderson also seeks to hold Warden James Miller liable because he is in charge of the prison, the medical unit, and the deputies involved in the disciplinary proceeding. Anderson also contends that the defendants failed to follow prison policy and that Warden Miller failed to properly supervise them to assure that the deputies followed departmental regulations.

Finally, Anderson also complains that, while in isolation, he was required to give up his mattress for 17 hours of each day which caused him discomfort during the 10 days he spent serving the erroneous disciplinary sentence.

**B.     The *Spears* Hearing**

Anderson testified that he is presently in jail on a probation violation revocation. He stated that at the time of the alleged events, he was housed in a segregation cell. He stated that he was ordered to remove his mattress from his cell during the day. He claims that he told the officer that he had a duty status with a 15-pound lifting restriction. He stated that the officer said he did not have that duty status and, if he did not bring the mattress out, the officer would give him a disciplinary write-up. Approximately fifteen minutes later, the officer returned with other officers to remove the mattress from the cell. Anderson testified that he was then given a disciplinary write-up for refusing to comply with two direct orders to move the mattress.

Anderson testified that he went to a disciplinary hearing where he advised Major Miller of his duty status. He further stated that, after checking with Nurse Rowley[4] in the medical department, Major Miller was advised that he did not have that duty status. Anderson stated that he then requested that he be allowed to retrieve his locker box where he kept his copy of the duty status.

Anderson claims that the duty status was retrieved by a deputy and brought to Major Miller during the hearing. Anderson stated that Major Miller nevertheless convicted him and told him to file an appeal. Anderson also stated that he told Major Miller that it was cruel and unusual punishment for him to be required to sleep on steel while in segregation.

Anderson further testified that Warden Miller reversed the disciplinary board's finding but he had already served the 10 days in isolation. Anderson complains that the fact that he prevailed on appeal does not erase the fact that he had to serve 10 days in isolation for a wrongful disciplinary conviction.

---

[4]In his complaint, Anderson alleged that Major Miller spoke with Nurse Pittman.

4

He testified that he filed suit against Nurse Pittman and Nurse Rowley because they wrongly advised Major Miller that he did not have a restricted duty status. He stated that he also filed suit against Officer Magee because he was the person who filed the disciplinary charge. Anderson stated that he is seeking a transfer to another facility and monetary compensation.

## II. Standards of Review

### A. Frivolousness Standard

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

B.     **Fed. R. Civ. P. 12(b)(6) Standard**

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

In resolving a motion under Rule 12(b)(6), the court is generally limited to considering only those allegations appearing on the face of the complaint. *Benton*, 960 F.2d at 21. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). Further, the Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

6

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. Review for Frivolousness

Having set forth the applicable standards of review, the Court will first consider its statutory review for frivolousness before proceeding to the pending motion to dismiss.

#### A. The Defendants in Their Official Capacities

Anderson has named the defendants in both their individual and official capacities. However, the claims against the defendants in their official capacity are frivolous and otherwise fail to state a claim for which relief can be granted.

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). A state actor sued in his official capacity is not considered a person for purposes of suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Instead, the action would be considered one against the their employer, the State of Louisiana, which is prohibited by the Eleventh Amendment. *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. Oct. 18, 2000).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir.

1986). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Anderson's claims against the defendants, against Warden James D. Miller, Jr., Major Jerry P. Miller, Sergeant Hugh Magee, Director of Nursing Bessie Carter, Stephanie Rowley, RN, and Oneita Pittman, RN, in their official capacities, fail to state a claim for which relief can be granted and are otherwise barred by the Eleventh Amendment and therefore, seek relief against an immune defendant and must be dismissed pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

**B.     Request for a Transfer**

As part of his requested relief, Anderson seeks a transfer from WCI to another facility. His request for transfer is frivolous for the following reasons.

It is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute § 15:824, authorizes the Director of Corrections to decide to which penal institution an inmate should be delivered or transferred.[5] The Director of Corrections has

---

[5]La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public

8

broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Sec'y*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4 Cir. 1994).

Thus, the State of Louisiana, by its broad discretionary statutes, has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another. *Santos*, 1996 WL 89260 at *4. Therefore, Anderson has no constitutional right to a transfer.

### C. Conspiracy Claims against Magee, Pittman, Rowley, and Jerry Miller

Anderson also alleges that Nurses Pittman and Rowley lied about his duty status as part of an alleged conspiracy with others, presumably Magee and Jerry Miller, to cause his conviction on the disciplinary charges. He complains that the nurses were not truthful to Major Miller when he inquired about the duty status.

The documentation attached to and incorporated in the plaintiff's complaint by reference reflects that he was charged with disobeying Officer Magee's orders to move the mattress because

---

Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.

B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

9

he had a "25-pound" weight restriction on his duty status. He was later able to establish he had a "15-pound" lifting restriction. Thus, the nursing staff could not have lied if they confirmed that Anderson did not have a "25-pound" restriction as he told Officer Magee. Furthermore, Anderson's allegation that the nurses relayed "incorrect" information to Major Miller belies the allegation that there was some active conspiracy to convict him of the disciplinary charge.

Nevertheless, vague and conclusory allegations of conspiracy will not support a §1983 claim. To state a conspiracy claim under the civil rights statutes, plaintiff must plead "operative facts" from which one may reasonably infer a prior illegal agreement. *Way v. Mueller Brass Co.,* 840 F.2d 303 (5th Cir.1988). Naked assertions or boilerplate allegations concerning a conspiracy are insufficient to state a viable constitutional claim. *See Phillip v. Mashburn,* 746 F.2d 782, 785 (11th Cir.1984); *Theis v. Smith,* 676 F. Supp. 874, 877 (N.D. Ill.1988).

The conspiracy claims against these defendants therefore fail to state a claim for which relief can be granted. He has not alleged facts to suggest that any of the defendants acted in "combination, agreement, or understanding" or "plotted," to convict him of a disciplinary violation or to sentence him to the 10 days in isolation. The fact that it happened does not reflect a conspiracy. Based upon the facts as alleged by Anderson, the Court finds that the conspiracy claims against Nurse Pittman, Nurse Rowley, Officer Magee, and Major Miller should be dismissed with prejudice.

### D. <u>Supervisory Liability of Warden James Miller and Bessie Carter</u>

Anderson alleges that Warden James Miller should be held liable because he is in charge of the medical unit and the deputies who sentenced him. He contends that Warden Miller failed to supervise the officers involved, who failed to follow prison policy, and assure that they followed the

departmental regulations. Anderson has also named Bessie Carter as the nursing supervisor over Powell and Rowley who allegedly lied about his duty status to the disciplinary board.

A supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

Supervisory liability may additionally exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304. An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992). A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made

by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, Anderson has not alleged that Warden Miller was directly involved in his experience except in the reversal of his disciplinary conviction. Anderson instead seeks to hold Warden Miller liable because he was in charge of the prison personnel who allegedly subjected him to the "cruel and unusual punishment" of an erroneous disciplinary sentence and because he failed to assure that they complied with prison policy.

Anderson, however, has not identified the particular policy he claims was violated. Pursuant to the prison policies he has mentioned, he was provided with a disciplinary hearing on the disobedience charges and eventually succeeded on appeal to have his record cleared. He therefore, has failed to state a claim of supervisory liability against Warden Miller.

Similarly, Anderson alleges that Bessie Carter is liable because nurses on her staff lied. This in no way implicates Carter or any particular prison policy so as to establish liability on her part under § 1983.

For these reasons, the claims against Warden Miller and Carter must be dismissed as frivolous and for failure to state a claim for which relief can be granted. Having dismissed the claims against Warden James Miller, his **Motion to Dismiss Defendant James Miller (Rec. Doc. No. 6)** should be dismissed as moot.

E.       **Remaining Claims Major Jerry Miller**

Anderson also alleges that Major Jerry Miller should be held liable under § 1983 because, in spite of the evidence at the hearing, Major Miller found him guilty and sentenced him to 10 days in isolation. As noted above, the initial charge against Anderson was disobeying Magee's orders to move the mattress based on his assertion that he had a "25-pound" lifting restriction. Anderson seeks to hold Major Miller responsible for non-specific damages arising out of his 10 day sentence to isolation which was completed before the disciplinary conviction was expunged.

First, under Title 42 U.S.C. § 1997e(e), an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury." The United States Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719 (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury))). Anderson has not alleged that he suffered any physical injury from his placement in isolation for ten days.

The Fifth Circuit has held that Due Process requires that prison disciplinary hearings should be conducted before a tribunal having at least "an apparent impartiality toward the charges." *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) (citing *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir.1970)). However, the constitution demands due process, "not error-free decision-making." *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir.1983). The Fifth Circuit has long held that if the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded the plaintiff

to clear himself of misdeeds which he did not commit sufficed to satisfy due process. *Collins*, 743 F.2d at 254.

In this case, Anderson not only had the opportunity to clear himself but he was successful on appeal. He received adequate due process, a concept which this Court can review no further.

In *Sandin v. Connor*, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a prisoner's due process claims relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

In *Sandin*, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a prisoner was placed in disciplinary segregation for 30 days and the discipline <u>did not inevitably affect the duration of his sentence</u>, the Court held that due process does <u>not</u> require that the prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974),[6] and *Hewitt*, 459 U.S. at 460.

The restriction placed on Anderson was not atypical. "'Absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be

---

[6] In *Wolff*, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. *Wolff*, 418 U.S. at 556. Nevertheless, the *Wolff* court held that prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. *Id.*

a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (*quoting Pichardo v. Kinker*, 73 F.3d 612 (5th Cir.1996)); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns.") Examples of disciplinary hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of psychotropic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. *Sandin*, 515 U.S. at 484.

Anderson was never subject to these types of atypical restrictions and suffered no constitutional harm from his 10 days in isolation. For the foregoing reasons, Anderson has not stated a claim for denial of due process against Major Miller arising out of his disciplinary hearing or confinement for the later-expunged disciplinary charge itself. *See Banks v. Cain*, 2003 WL 23997326 (M.D. La. Aug. 12, 2003) (relying on *Sandin* to dismiss § 1983 claim after disciplinary conviction was reversed on appeal). His claims against Major Jerry Miller must be dismissed as frivolous and otherwise for failure to state a claim.

## V. Recommendation

It is therefore **RECOMMENDED** that Warden James Miller's **Motion to Dismiss Defendant James Miller (Rec. Doc. No. 6)** be **DISMISSED as moot**.

It is **FURTHER RECOMMENDED** that plaintiff's § 1983 claims against the defendants, Warden James D. Miller, Jr., Major Jerry P. Miller, Sergeant Hugh Magee, Director of Nursing

Bessie Carter, Stephanie Rowley, RN, and Oneita Pittman, RN, in their official and individual capacities, be dismissed pursuant to Title 28 U.S.C. § 1915 and § 1915A and Title 42 U.S.C. § 1997e as frivolous, for failure to state a claim for which relief can be granted and/or for seeking monetary damages against immune defendants.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 24th day of June, 2005.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE